Appeal of **ALABAMA COCA COLA BOTTLING CO.**                    **Docket No. 1164.**

Depreciation on plant and equipment based on a rate of 10 cents a case on bottled coca cola taken during the war period on account of increased costs and heavy losses of bottles in distribution to an Army camp was not justified after the close of the war and the return of normal conditions.

When the payment of a bonus in addition to regular salary is determined by contract between employers and employees and payments under such contracts are reasonable in amount, they are allowable deductions from the income of the employer.

Submitted February 5, 1925; decided March 18, 1925.

*Albert B. Hawkins, C. P. A.,* for the taxpayer.

*A. H. Fast, Esq.,* for the Commissioner.

Before GRAUPNER, LANSDON, and LITTLETON.

FINDINGS OF FACT.

1. The taxpayer is an Alabama corporation engaged in the manufacture, bottling, and sale of coca cola. Its principal place of business is at Anniston, and it has several distributing agencies at other places in the northern part of Alabama.

2. From the date of its organization in 1907 to and including 1916, except 1913, the taxpayer charged the cost of all additions to plant and equipment, including the amounts paid each year for bottles and

cases, to an investment account and computed its annual depreciation of plant and equipment by charging off its books an amount equal to 5 cents a case on all its bottled product sold each year. For the years 1917, 1918, 1919, and 1920, it increased its depreciation formula to 10 cents a case. For 1921 and 1922 the rate of depreciation was reduced to 7 and 5 cents a case, respectively.

3. As a result of high prices due to war conditions during the years 1917, 1918, 1919, and 1920, the cost of the bottles and cases used by the taxpayer was greatly increased and for that entire period was substantially higher than in preceding years.

4. During the World War, Camp McClellan, a United States Army training camp, with as many as 40,000 soldiers in garrison at times, was located near Anniston. Heavy trucks used by the Army cut up the roads to an extent that they were very rough. This resulted in more than usual depreciation of trucks used by the taxpayer in its delivery service to the camp and in excessive breakage of bottles and consequent heavy loss of product. Soldiers in training consumed large quantities of the product of the taxpayer during 1917 and 1918. Due to conditions existing in the camp there was a heavy increase in losses from breakage of bottles and from failure to return bottles and cases. Trucks delivering the product of the taxpayer to customers at the camp carried 100 full cases and should have returned the same number of empty cases on each trip, but, in fact, often brought back as few as 10 cases filled with empty bottles. The taxpayer was only partially compensated for such increased losses by requiring a deposit of 30 cents a case on all product delivered to its consumers.

5. The Commissioner accepted the taxpayer's formula of 5 cents a case for depreciation up to and including 1916 and approved the increase to 10 cents a case in 1917.

6. During the years involved in this appeal the taxpayer had an agreement with its manager to pay him a bonus, in addition to his stated salary, of 10 per cent on all profits in excess of $20,000 per year. For the purpose of determining the amount of such bonus for the years in question the taxpayer computed its net profits by taking depreciation at the rate of 5 cents a case on all goods sold.

7. Upon auditing the taxpayer's income-tax returns for 1918, 1919, and 1920, the Commissioner applied the rate of 5 cents a case on goods sold in computing the depreciation for those years, and disallowed parts of the manager's bonus in the amounts of $58.63 for 1918, $233.52 for 1919, and $1,178.75 for 1920, as proper deductions from gross income. As a result of the use of the depreciation formula of 5 cents a case and of the disallowances of the bonus items, the Commissioner determined an additional tax liability of the taxpayer for the years involved of $12,299.62, $9,252.35, and $7,531.85, or a total of $30,083.82, and so notified the petitioner in a deficiency letter mailed on October 30, 1924.

### DECISION.

The deficiency should be computed in accordance with the following opinion. Final decision will be settled on consent or on 10 days' notice in accordance with Rule 50.

## OPINION.

LANSDON: The taxpayer uses a formula for computing depreciation that it has employed since 1907 and that has been accepted, in principle, by the Commissioner during all that time. It is disclosed by the evidence that the taxpayer and the Commissioner agree on the rule for computing depreciation but disagree as to the proper rate for the years 1918, 1919, and 1920.

The evidence adduced at the hearing convinced the Board that the taxpayer suffered very heavy losses from breakage and wastage of bottles and cases during the years that Camp McClellan, a training camp of the United States Army during the World War, was maintained near the City of Anniston, and that there was a substantial increase in the cost of such bottles and cases purchased during that period. The Board, therefore, holds that the depreciation formula of 10 cents a case was reasonable for 1918 and should be allowed.

The armistice became effective on November 11, 1918, and the population of Army camps began to decrease quite rapidly immediately thereafter. The average number of soldiers in garrison during 1919 was small as compared with 1917 and 1918, and the camp had been practically abandoned before the beginning of 1920. The principal reason pleaded by the taxpayer for increasing its depreciation rate during 1917 and 1918 has little weight for 1919, and none thereafter. The Board holds that the Commissioner's allowance for depreciation at 5 cents a case of product sold for the years 1919 and 1920 is correct.

The Board is of the opinion that the Commissioner erred in disallowing any part of the bonus payments made by the taxpayer to its general manager during the years in question. Such payments are usual and entirely regular. In this case the amount was reasonable and was authorized by a contract between the parties concerned.